UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY ALAN BROWN,

              Plaintiff,                       Case No. 2:17-cv-11334
                                                District Judge Laurie J. Michelson

v.                                        Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 15), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 17) AND AFFIRM THE DECISION OF THE COMMISSIONER

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 17),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Gary Alan Brown, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for social security disability insurance

(DI) benefits. This matter is before the United States Magistrate Judge for a Report

and Recommendation on Plaintiff's motion for summary judgment (DE 15), the

Commissioner's cross-motion for summary judgment (DE 17), Plaintiff's reply brief (DE 18), and the administrative record (DE 9).

## A.   Background

Plaintiff filed his application for DI benefits on November 8, 2013, alleging that he has been disabled since August 1, 2009.  (R. at 222-28.)  Plaintiff's application was denied on February 13, 2014, and he sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 132-43.) ALJ Anthony R. Smereka held a hearing on July 20, 2015, at which Plaintiff was represented by counsel.  (R. at 65-120.) Plaintiff was sent for additional consultative examinations, and then appeared for a supplemental hearing again before ALJ Smereka on February 18, 2016.  (R. at 36-64.) The ALJ considered all of the evidence and, on March 31, 2016, determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 16-35.) On March 10, 2017, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.) Thus, ALJ Smereka's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on April 26, 2017.

## B.   Plaintiff's Medical History

The administrative record contains approximately 127 pages of medical records (Exhibits 1F through 11F) spanning the period from May 16, 2008 through August 24, 2015, all of which were available to the ALJ at the time of his March

2

28, 2016 decision.  The medical records include treatment notes and a Physical Residual Functional Capacity Assessment from Plaintiffs' treating physician, Dr. Mark Richter, and consulting examiner opinions by Jocelyn A. Markowicz, Ph.D., Martha Pollock, M.D., Nick Boneff, Ph.D. and Cynthia Shelby-Lane, M.D., as well as a Mental Residual Functional Capacity Assessment by Elaine M. Tripi, Ph.D. (R. at 340-467).  The administrative record also contains a State agency reviewing medical source opinion by Dyan Hampton-Aytch, Ph.D., dated February 12, 2014.  (R. at 125-26.) These records will be discussed in detail, as necessary, below.

### C.    Hearing Testimony

Plaintiff testified at both the July 20, 2015 hearing and the February 18, 2016 supplemental hearing before ALJ Smereka.  Vocational expert Pauline Pegram provided testimony at the initial hearing and vocational expert Helen Topcik provided testimony at the supplemental hearing. The hearing testimony will be cited as necessary below.

### D.    The Administrative Decision

On March 28, 2016, ALJ Smereka issued an "unfavorable" decision. Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of August 1, 2009

3

through his date last insured of September 30, 2014. (R. at 21.) At **Step 2**, the

ALJ found that Plaintiff has the following severe impairments: degenerative disc

disease of the cervical and lumbar spines, with a history of multiple motor vehicle

accidents; and, tendonitis of the shoulders, but that Plaintiff's medically

determinable mental impairment of adjustment disorder/depression did not cause

more than minimal limitation in his ability to perform basic mental work activities

and therefore was nonsevere. (R. at 21-24.) At **Step 3**, the ALJ found that

Plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments. (R. at 24-25.) Prior

to **Step 4** of the sequential process, the ALJ determined that Plaintiff has the

residual functional capacity ("RFC")[1] to:

> perform light work … except no hazards including work at
> unprotected heights or around dangerous moving machinery; no
> climbing of any ladders, ropes, scaffolds; no more than occasional
> climbing of ramps or stairs; no more than occasional balancing,
> stooping, kneeling, crouching; no crawling; no reaching above
> shoulder level; no driving in the course of employment; no
> concentrated exposure to vibration; and the allowance for a sit stand
> option allowing the claimant to perform the work either in a sitting or
> standing position and allowing for a change of position every 30
> minutes.

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

(R. at 25-29.)  At **Step 4**, the ALJ found that Plaintiff is not capable of performing his past relevant work.  (R. at 29.)  The ALJ proceeded to find at **Step 5** that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 29-31.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 1 2009, the alleged onset date, through September 30, 2014, the date last insured.  (R. at 31.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)). "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").  Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability."  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273

(6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner

of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive . . . ."); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by

substantial evidence must stand, even if we might decide the question differently

based on the same evidence.") (citing *Wright-Hines v. Comm'r of Soc. Sec.*, 597

F.3d 392, 395 (6th Cir. 2010)).  Finally, even if the ALJ's decision meets the

substantial evidence standard, "'a decision of the Commissioner will not be upheld

where the SSA fails to follow its own regulations and where that error prejudices a

claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*,

582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th

Cir. 2007)).

    **F.**    **Analysis**

    In his motion for summary judgment, Plaintiff asserts essentially two claims

of error.  First, he contends that the ALJ's RFC is not supported by evidence that

he could perform any job for a full eight-hour day because the opinion evidence

only supports a finding that Plaintiff can sit or stand for a total of six hours. (DE 15

at 1, 17.)  Second, Plaintiff argues that the ALJ failed to adequately consider the

side effects of his medications and sleep deprivation in determining his ability to

work.  (*Id* at 1, 18.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision.  (DE 18.)

**1.    The ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC for a reduced range of light work is not supported by substantial evidence.  According to Plaintiff, the ALJ's RFC assessment indicated that Plaintiff needed "a sit stand option allowing the claimant to perform the work either in a sitting or standing position and allowing for a change of position every 30 minutes," but that "no walking was involved" in the RFC.  (DE 15 at 17, citing R. at 25.)  Plaintiff stated that the medical opinion of consulting examiner Dr. Shelby-Lane limited Plaintiff to work where he would sit, stand or walk for only an hour each at a time, for a total of not more than two to three hours each per eight-hour workday.  (R. at 458.) Plaintiff argues, incorrectly, that because walking was not expressly "involved" in the ALJ's RFC, Plaintiff was limited to sitting for three hours per day and standing for three hours per day at most, which does not add up to a full eight-hour workday. (DE 15 at 18, 22-23.) The Commissioner responds that the ALJ properly analyzed the evidence and that substantial evidence supports the ALJ's RFC determination for a reduced range of light work.  (DE 15 at 8-17.)

Initially, it must be borne in mind that Plaintiff bears the burden of proof at Steps 1-4, including proving his RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d

8

525, 529 (6th Cir. 1997) (["D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") *(citing Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 148 (6th Cir.1990); *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980)); *Cole v. Sec'y of Health and Human Servs.,* 820 F.2d 768, 771 (6th Cir.1987)); *see also Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity").  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391-92 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner.").

Plaintiff's RFC is "the most [he] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(e), 416.927(e). "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x

181, 194 (6th Cir. 2009) (citation omitted). Pursuant to Social Security Rule 96-

8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each
> conclusion, citing specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations). In assessing
> RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and
> continuing basis (i.e., 8 hours a day, for 5 days a week, or an
> equivalent work schedule), and describe the maximum amount of each
> work-related activity the individual can perform based on the
> evidence available in the case record. The adjudicator must also
> explain how any material inconsistencies or ambiguities in the
> evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a

'function-by-function evaluation' to determine a claimant's RFC, case law does

not require the ALJ to discuss those capacities for which no limitation is alleged."

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Instead, the

ALJ '"need only articulate how the evidence in the record supports the RFC

determination, discuss the claimant's ability to perform sustained work-related

activities, and explain the resolution of any inconsistencies in the record."' *Id.*

(citations omitted).

The ALJ here thoroughly reviewed and considered both Plaintiff's and his

wife's third-party function reports, that he had a college education, his hearing

testimony, his daily activities, the objective medical evidence, his treatment

history, and the opinion evidence, and found that, despite Plaintiff's back, neck and

shoulder pain, he is still capable of performing a reduced range of light exertional

level work.  Plaintiff and his wife reported in their respective function reports that

he is limited in his ability to prepare meals, clean house, shop and drive, but

Plaintiff reported to doctors several times during the relevant time period that he

was exercising regularly, is an avid reader, goes bowling, performs light

housework, prepares meals, can lift up to 20 pounds, and even that he was working

full-time during the period he now claims to have been disabled.[2]  (R. at 23-29,

350-53, 357, 396-99, 405-08.)  ALJ Smereka recognized that Plaintiff had neck,

back and shoulder pain, and that imaging revealed mild disc space narrowing at

L5-S1 and L4-L5, mild facet hypertrophy with no central or foraminal

encroachment, normal imaging of his shoulders, and that imaging since the

expiration of Plaintiff's date last insured revealed no significant interval changes.

(R. at 26-27, 369-70, 382-83, 424-25, 427-28.)  The ALJ observed that Plaintiff's

physical exams during the relevant time period, including a January 2014

consultative examination by Dr. Martha Pollock, were generally unremarkable, and

he usually demonstrated normal strength, balance, range of motion, sensation,

reflexes, and gait, with no or minimal joint tenderness and negative straight leg

raises, and reported that conservative treatment, including Motrin and an herbal

---

[2] Despite Plaintiff's statements to his doctor about working, the ALJ nevertheless found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured of September 30, 2014. (R. at 21, 26.)

supplement of Turmeric, helped his pain.  (R. at 25-29, 348, 350-53, 355-56, 375-76, 405-08, 413-15.)

The ALJ also considered the opinion evidence in making his RFC determination.  He recognized that Plaintiff's physician, Dr. Mark Richter, opined in July 2015 that Plaintiff could perform a range of sedentary work, that he could not use either lower extremity to operate foot controls, that he could sit, stand or walk for a combined total of no more than three hours, and that even with a sit-stand option he could not work unless he had complete freedom to rest frequently and without restriction.  (R. at 440-41.)  ALJ Smereka gave this opinion "limited weight" because "[Dr. Richter's] conclusions are not consistent with the medical evidence of record [as outlined above], and appear to be largely sympathetic in nature" and based on Plaintiff's subjective complaints of pain, unsubstantiated by the record evidence.  (R. at 28-29.)  The ALJ also noted that consultative examiner Dr. Cynthia Shelby-Lane opined on August 24, 2015 that that Plaintiff could perform a range of light work, could lift 20 pounds occasionally, could stand, walk or sit for only an hour each at a time, had frequent extremity limitations, and required environmental limitations as well.  (R. at 452-67.)  The ALJ gave this opinion "weight" because it "appears to take into account the objective imaging findings and the examination she performed."  (R. at 28.)  The ALJ noted that in Dr. Shelby-Lane's examination of Plaintiff, Plaintiff had mild tenderness to

12

palpation across the shoulder area, with paracervical and paralumbar discomfort, no tremors, reported parasthesias in his calves, and he was able to get on and off the table slowly but independently, able to tandem, heel and toe walk, squat to 70% and recover and bend to 75%. (R. at 27, 452-67.)

Plaintiff does not challenge the weight the ALJ assigned to the opinion evidence in this case, although he states that the ALJ gave Dr. Shelby-Lane's opinion "the greatest weight." (*See* DE 15 at 16; R. at 28.)[3] Instead, he relies on the premise the Dr. Shelby-Lane indicated in a "check-the-box" form that Plaintiff could sit, stand, and walk for up to one hour at a time and do *each of these* for two to three hours per day (for a maximum of nine hours total), and that the ALJ's RFC only refers to "a sit stand option" and does not "involve[]" walking. (DE 15 at 17.) Plaintiff interprets Dr. Shelby-Lane's restriction and the ALJ's RFC to mean that Plaintiff could *only* sit and stand only for a total of six hours in an eight-hour workday *and apparently not walk at all* – in other words nine hours maximum under the Shelby-Lane opinion, minus three hours for the walking not expressly mentioned in the RFC, equals six hours – and thus he cannot perform sustained

[3] While the ALJ may have arguably given Dr. Shelby-Lane's opinion "the greatest weight" *relative to some of the other opinions*, *e.g.*, as compared with the "little weight" given to Dr. Tripi's opinion (R. at 23) or the "limited weight" given to Dr. Richter's opinion (R. at 28), the fact remains that the ALJ just stated that Dr. Shelby-Lane's opinion was given "weight[,]" without any quantifier or adjective. In contrast, Drs. Hamptom-Aytch's, Boneff's and Markowicz's opinions were explicitly given "great weight[.]" (R. at 23.)

work activities on a regular and continuing basis.  (DE 15 at 16-18, citing R. at

458.)  However, Plaintiff's argument is based upon a flawed assumption.

Plaintiff's premise assumes that the ALJ's failure to expressly mention walking

restrictions in the RFC means that Plaintiff cannot spend any time walking; but the

better assumption is that the ALJ determined that no *additional restriction* on

walking was necessary, beyond the restriction included in the definition of "light"

work.

The ALJ here found that Plaintiff could perform "light work *as defined in 20

CFR 404.1567(b),*" subject to listed exceptions, including a sit/stand option

allowing for a change of position every 30 minutes.  (R. at 25 (emphasis added).)

The full range of light work, as defined by 20 C.F.R. § 404.1567(b), requires

standing *or* walking, off and on, for a total of approximately six hours of an eight-

hour workday and the ability to sit when not standing or walking.  SSR 83-10,

1983 WL 31251, at *6.  Consistent with those limitations, the ALJ's hypothetical

to the vocational expert assumed Plaintiff's "ability to stand and walk will be six

out of eight hours, and the ability to sit the same amount of time," but with a

sit/stand option allowing a change of position every 30 minutes or so.  (R. at 103-

04.)  In response, the vocational expert testified that such an individual could

perform jobs that existed in significant numbers in the national economy, including

such representative occupations as a sales representative-printing supplies, printing

14

salesman, customer order clerk, and telephone sales representative. (R. at 30.)  The

ALJ was not required "to discuss those exceptions for which no limitation is

alleged."  *See Delgado*, 30 F. App'x  at 547.  Thus, the absence of a limitation on

walking in the RFC, *beyond that set forth for "light work,"* demonstrates that the

ALJ, consistent with the hypothetical posed to the vocational expert, did not find

any *further* limitation on walking was necessary, as he did with sitting (with the sit

stand limitation).

And even if the ALJ had included a further walking restriction within the

RFC based upon Dr. Shelby-Lane's opinion, the walking restriction would have

permitted Plaintiff to walk two to three hours, still yielding an eight or nine hour

work day.[4]  Contrary to Plaintiff's contention, Dr. Shelby-Lane's opinion that

Plaintiff had the ability to sit, stand and walk for up to three hours each in an eight-

hour workday is consistent with light work.  *See Rutledge v. Comm'r of Soc. Sec.*,

No. 2:14-CV-14468-DML-PTM, 2015 WL 12697650, at *7 (E.D. Mich. Sept. 29,

2015) (finding that doctor's opinion that plaintiff had the ability to sit for three

hours, walk for two hours and stand for five hours in and eight-hour workday is not

inconsistent with light work) (citing 20 C.F.R. § 404.1567(b)), *report and

recommendation adopted*, 2016 WL 1294843 (E.D. Mich. Apr. 4, 2016.).

---

[4] When asked how long he could walk before having to rest or sit down, Plaintiff
testified, "Maybe a half mile or mile maybe, but that might be pushing it again, in a
day."  (Tr. 79.)

Moreover, the Medical Source Statement Dr. Shelby-Lane completed included a question, immediately following the "sitting/standing/walking" limitations, that "[i]f the total time for sitting, standing and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?" which Dr. Shelby-Lane left blank, presumably indicating that she did not think Plaintiff was limited to sitting, standing and walking for less than eight hours.  (R. at 458.)

Plaintiff's argument fails for other reasons as well.  Plaintiff's argument that the ALJ gave Dr. Shelby-Lane's opinion "the greatest weight" − or the ALJ's actual wording of mere "weight" − also seems to suggest that the ALJ was required to accept Dr. Shelby-Lane's opinion as sacrosanct.  (See DE 15 at 16; DE 18 at 4-5 (stating "it is critical to note that the ALJ *did* give these 'checkmark' limitations significant weight – *great* weight, in fact" (emphasis in original).)  This is incorrect. The ALJ was not compelled to adopt Dr. Shelby-Lane's restrictions *in toto*.  Rather, the ALJ "is required to incorporate only those limitations accepted as credible." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.").  In other words, the ALJ was free, in his capacity as trier of the facts, to reach contrary determinations. *See Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) (stating "no rule or

16

regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant weight'" and "the ALJ was not required to adopt all of Dr. Ali's opinion solely because she found the opinion as a whole persuasive").  In fact, the ALJ also incorporated numerous findings in Plaintiff's RFC *more restrictive* than those opined by Dr. Shelby-Lane, based on his review of the record evidence, including limiting Plaintiff to *no* overhead reaching, crawling, work around dangerous moving machinery, driving in the course of employment, and exposure to vibration, while Dr. Shelby-Lane indicated limitations only to frequent overhead reaching, occasional crawling, occasional work around moving mechanical parts, occasional driving, and occasional exposure to vibration.  (R. at 25, 459-61.)

While Plaintiff believes that more restrictive limitations should have been incorporated in Plaintiff's RFC, as discussed above, the ALJ did not find that there was credible or compelling evidence that supported the incorporation of greater restrictions in the RFC or the hypothetical.  The ALJ thoroughly examined and considered the entire record evidence in this case, including the treatment records, diagnostic reports and opinion evidence, and his RFC determination is supported by substantial evidence and within his "zone of choice."  *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012) (even if the record contains "conflicting evidence

that would suggest further limitations, under the substantial evidence standard, administrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.") (citation omitted). The ALJ was not required to include additional restrictions and Plaintiff's claim of error is denied.

### 2. The ALJ Properly Considered the Side Effects of Plaintiff's Medications and Sleep Deprivation in his RFC

Plaintiff argues that there is "significant evidence" in this case that side effects from his medications caused fatigue and drowsiness, in combination with his inability to sleep due to pain, and that the ALJ failed to *adequately* consider the side effects of his medications and the effects of sleep deprivation in determining Plaintiff's ability to work.   (DE 15 at 18-21; DE 18 at 4, n.1 (clarifying that he is "contending that the ALJ did not *adequately* consider those factors[.]" (emphasis in original).)   The Commissioner responds that the ALJ explicitly addressed Plaintiff's complaints and found that "hazard and driving restrictions accommodate [Plaintiff's] reports of drowsiness and other medication side effects," and that the ALJ thoroughly reviewed the record evidence and did not find any specific, functional work-related limitations beyond those set forth in the RFC finding.  (DE 17 at 9-18.)

First, Plaintiff argues that he testified that his medications left him "really tired," to the point that he did not always trust himself to drive. (DE 15 at 19, citing

18

R. at 79-80.)  However, the ALJ was not obligated to accept Plaintiff's subjective complaints.  The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence" and that "a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by [Plaintiff]."  (R. at 27-28.)  Plaintiff does not assert a challenge to the ALJ's credibility determination.  In any event, the ALJ expressly considered Plaintiff's claims that pain and medication side effects left him tired and included in Plaintiff's RFC a restriction to "no driving in the course of employment."  (R. at 25.)

Second, Plaintiff also argues that consultative examiner Jocelyn A. Markowicz reported "[i]t is indeed plausible that [Plaintiff] does indeed struggle with fatigue and mental 'fogginess' at times due [to] medication"' and may suffer from poor concentration as a result.  (DE 15 at 19, citing R. at 402.)  However, Plaintiff neglected to include the entire context of that statement by Dr. Markowicz, which is: "While he reported subjective struggles with his memory, *impairment was not determined* by his performance on mental status queries or in providing his psychosocial history. It is *plausible* that he does indeed struggle with fatigue and mental fogginess,' at times, due [to] medication *as asserted by his wife on the aforementioned document*."  (R. at 402 (emphases added).)  Thus, Dr.

19

Markowicz first noted that testing did not support Plaintiff's claimed "subjective struggles with his memory" and then simply reported a statement made by Plaintiff's wife, which was merely found to be "plausible."  In any event, the ALJ reviewed Dr. Markowicz's opinion, which he gave great weight, and noted that testing showed only a mild impairment.  (R. at 23.)  Dr. Markowicz opined:

> Claimant reported an employment history reflective of his ability to sustain employment without chronic interpersonal struggles.  He would work effectively with co-workers and supervisors in the future.  He is able to understand and remember instructions, locations, and work-like procedures.  He has the ability to carry out instructions and sustain a normal routine without special supervision.  Claimant is able to maintain adequate attention and concentration.  He may struggle with poor concentration at times.  Claimant is able to present with appropriate grooming and hygiene requisite in a work environment.  Claimant possesses the appropriate ability to respond appropriately to changes in the work setting and has good insight and judgment in order to be aware of normal hazards and take appropriate action in the workplace.

(R. at 402.)  This opinion supports the ALJ's RFC determination.

Third, Plaintiff points out that his treating doctor, Dr. Richter, wrote that:

> Because of the distraction of his constant pain and the effect that the medication has on his alertness he cannot perform work that requires learning new tasks or that requires accuracy and precision.  Because of this impairment in his ability [for] focus and concentration and because of his pain, he is limited to performing only simple routine tasks and would require frequent rest periods.  These limitations, present since 8/26/11, are considered permanent, have worsened over time and are certain to progress.

(DE 15 at 19, citing R. at 441.)  As discussed above, the ALJ gave this opinion by Dr. Richter limited weight because:

20

His conclusions are not consistent with the medical evidence of record, and appear to be largely sympathetic in nature. For example, he provides limitations on simple grasping, with frequent rest periods without providing a foundational support aside from references to the claimant's subjective constant pain despite a limited number of visits and the claimant's demonstrated ability to perform manipulative maneuvers at the consultative exam. I note that the claimant's representative asserted that the claimant cannot afford additional testing, and that the lack of monthly treatment does not illustrate a lack of pain. However, … the claimant had generally limited examination findings and mild radiological findings. Moreover, the claimant was often encouraged by Dr. Richter to continue conservative treatment such as Turmeric and that he should continue regularly exercising, which is contrary to such a disabling opinion.

(R. at 28-29.) Plaintiff does not argue that the ALJ improperly evaluated Dr. Richter's opinion. Further, Drs. Markowicz, Hampton-Aytch and Boneff all evaluated Plaintiff and/or reviewed the record and opined that Plaintiff did not have such limitations in ability to focus and concentrate and work restrictions. (R. at 125, 402, 446.) The ALJ gave these doctors' opinions regarding Plaintiff's ability to concentrate great weight, finding those opinions to be supported by examination and testing and that Plaintiff "generally demonstrated mild limitations at the majority of the consultative examinations." (R. at 23.) The weight given to these opinions has also gone unchallenged.

Fourth, Plaintiff directs the Court's attention to consultative examiner Elaine Tripi, Ph.D.'s conclusion that Plaintiff's "concentration is impaired and due to the fact that he has difficulty falling asleep and staying asleep, his daytime fatigue would interfere with his ability to function in a competitive work situation." (DE

15 at 19-20, citing R. at 435-36.)  The ALJ gave this opinion little weight because

Plaintiff "has generally demonstrated mild problems at the majority of the

consultative examinations" and it appears to be based on Plaintiff's subjective

statements of "having difficulties with his memory as well as irritability" and

"difficulty fallings asleep and staying asleep" without any related

neuropsychological testing, which Dr. Tripi indicated in her report "would be

appropriate to further delineate difficulties in this area." (R. at 22-23, citing R. at

435-39.)  As with the other opinion evidence, Plaintiff has failed to argue that the

ALJ erred in evaluating this opinion evidence.  Moreover, "[a] physician's

'notation in his notes of a claimed symptom or subjective complaint from the

patient is not medical evidence; it is the "opposite of objective medical evidence"

… An ALJ is not required to accept the statement as true or to accept as true a

physician's opinion based on those assertions.' … 'Otherwise, the hearing would

be a useless exercise.'" *See Rutledge*, 2015 WL 12697650, at *7 (citations

omitted); *see also Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir.

2011) (noting that there was no medical opinion in "Dr. Killefer's pain-related

statement … [because] it merely regurgitates Francis's self-described symptoms.").

Accordingly, Plaintiff has failed to sustain his burden of establishing that the

ALJ committed any error when he found that "the hazard and driving restrictions

accommodate [Plaintiff's] reports of drowsiness or other medication side effects," and Plaintiff's claim of error should be denied.

### G.    Conclusion

Accordingly, the Undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's motion for summary judgment (DE 15), **GRANT**  Defendant's motion for summary judgment (DE 17), and **AFFIRM** the Commissioner's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 13, 2018               s/*Anthony P. Patti*
                                     Anthony P. Patti
                                     UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on August 13, 2018, electronically and/or by U.S. Mail.

                                     s/Michael Williams
                                     Case Manager for the
                                     Honorable Anthony P. Patti

24